UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RAFAEL PEREZ-RODRIGUEZ, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 11-0556 (JDB) |
| UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Partial Motion to Dismiss, or Alternatively, for Summary Judgment [Dkt. #20] and Defendant ICE's Partial Motion for Summary Judgment [Dkt. #26]. For the reasons discussed below, the Court grants the former and denies the latter without prejudice.

I. BACKGROUND

Plaintiff Rafael Perez Rodriguez is also known as Arthur Louis Guajardo. *See* Compl. at 1, 8 (Attestation); Mem. of P. & A. in Supp. of Defs.' Partial Mot. to Dismiss or, Alternatively, for Summ. J. ("Defs.' Mem."), Decl. of David Luczynski ("Luczynski Decl."), Ex. A (identifying requester as Arthur L. Guajardo); *see id.*, Decl. of Jim Morphew ("Morphew Decl."), Ex. B (Third Party Release Statement dated November 18, 2010) at 1 (identifying requester as Rafael Perez Rodriguez A.K.A. Arthur Louis Guajardo). He brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and challenges the responses of the Executive Office for United States Attorneys ("EOUSA"), the Social Security Administration

1

("SSA"), and the United States Immigration and Customs Enforcement ("ICE") to his requests for information.

### A. *Request to the Executive Office for United States Attorneys*

"On or about December 14, 2010, [plaintiff] did make a request in writing for a copy of any record . . . maintained by the [EOUSA]" about himself. Compl. at 2 (page numbers designated by the Court). Although the document plaintiff submitted to the EOUSA was labeled "Freedom of Information Request," in substance the document was a "Certificate of Identity" that did not indicate "which information [plaintiff] is seeking." Defs.' Mem., Luczynski Decl. ¶ 4. The EOUSA informed plaintiff that staff could not process the request because it did not "describe the records sought in sufficient detail to allow location of the records with a reasonable amount of effort (i.e., processing the request should not require an unduly burdensome effort or be disruptive to Department operations)." *Id.*, Luczynski Decl., Ex. B (Letter to plaintiff from William G. Stewart II, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated November 22, 2010) at 1. In addition, the EOUSA noted that the request did not "identify the specific United States Attorney's office(s) where [he] believe[d] records [responsive to his request] may be located," such as "the district(s) in which a prosecution or litigation occurred." *Id.*, Luczynski Decl., Ex. B at 1.

Plaintiff responded by letter, explaining that his was "a general request." *Id.*, Luczynski Decl., Ex. C (Letter to W.G. Stewart II from plaintiff dated December 3, 2010). Plaintiff asserted that he could "file for virtually anything the government has in its files that reference [him]," and he "demand[ed] copies of anything the government has in any file, department, agency, or databank that is indexed under [his] name, social security number, or other identifier." *Id.*, Luczynski Decl., Ex. C. The EOUSA deemed the request insufficient still, as plaintiff "did

not adequately describe the location of the records he was seeking." *Id.*, Luczynski Decl. ¶ 7. Plaintiff did not pursue an administrative appeal to the Office of Information Policy ("OIP"), *see id.*, Luczynski Decl. ¶ 8, and the EOUSA closed the request, *see id.*, Luczynski Decl., Ex. D (Letter to plaintiff from W.G. Stewart II dated February 3, 2011) at 2. According to plaintiff, the EOUSA "did fail, refuse, and neglect to comply" with his FOIA request, at which time he "elected to treat" the lack of response "as a denial of his request." Compl. at 2.

### B. Request to the Social Security Administration

"On or about November 23, 2010, [plaintiff] did make a request in writing for his entire . . . record maintained . . . by the [SSA]" about himself. Compl. at 4. Plaintiff addressed his request to the SSA's Office of Central Records Operations in Baltimore, Maryland. Defs.' Mem., Decl. of Dawn S. Wiggins ("Wiggins Decl."), Ex. A (Third Party Release Statement dated November 18, 2010) at 1. Attached to the request were a list of plaintiff's previous employers and copies of his earning statements. *See id.*, Wiggins Decl., Ex. A. Staff determined that information pertaining to plaintiff would be located at its Lubbock, Texas office, *id.*, Wiggins Decl., Ex. B (Letter to plaintiff from Dawn S. Wiggins, Freedom of Information Officer, SSA, dated March 30, 2011), and forwarded the request to that location by fax, *id.*, Wiggins Decl. ¶¶ 7-8.

The request sought "release of all . . . information concerning [plaintiff]," *id.*, Wiggins Decl., Ex. A, but it did not identify any particular information of interest. SSA staff was "unsure of the purpose of the request because [plaintiff] had requested . . . earnings information," even though he "submitted a copy of the earnings information that [the SSA] had already provided to him." *Id.*, Morphew Decl. ¶ 6. Plaintiff was informed that, "if he needed information that was

different than the earnings record that he had already been provided, he should make another request for information." *Id.*, Morphew Decl. ¶ 6. The SSA received no further inquiries or requests from plaintiff. *Id.*, Morphew Decl. ¶ 7. According to plaintiff, the SSA "did fail, refuse, and neglect to comply" with his FOIA request, at which time plaintiff "elected to treat" the lack of response "as a denial of his request." Compl. at 4.

### C. Request to the U.S. Immigration and Customs Enforcement

"On or about November 23, 2010, [plaintiff] did make a request in writing for his entire record maintained . . . by the [ICE]." Compl. at 6. In relevant part, the request stated:

> I request that a copy of the following documents be provided to me:
>
> 1. A copy of all and every single document[s] in the file pertaining to the report of investigation through the U.S. [D]epartment of Homeland Security in the Agency known as I.C.E. (Immigrations [sic] and Customs Enforcement).
>
> 2. A copy of the investigative file compiled in connection with the investigation of the arrest report refer[r]ed to paragraph 1 above.
>
> 3. A copy of all notes, memoranda, letters, and other writings relating to the [plaintiff], that were prepared, or compiled after the time [plaintiff] was arrested.

Mem. of P. & A. in Supp. of Def. ICE's Partial Mot. for Summ. J. ("ICE's Mem."), Decl. of Ryan Law ("Law Decl."), Ex. E (Letter to U.S. Immigration and Customs Enforcement from plaintiff dated November 18, 2010) at 1. Both the FOIA request and the accompanying Certificate of Identity identified the requester as "Rafael Perez Rodriguez, A.K.A. Arthur Louis Guajardo." *Id.*, Ex. E. ICE acknowledged receipt of plaintiff's request and assigned it a tracking number (2011FOIA3946). *See id.*, Law Decl., Ex. F (Letter to plaintiff from Catrina M. Pavlik-Keenan, FOIA Officer, ICE, dated December 14, 2010). By January 11, 2011, plaintiff had not

received a response from ICE, at which point he "elected to treat" the lack of response "as a denial of his request." Compl. at 6. In the interim, ICE staff conducted a search for responsive records in automated databases and its Chicago Field Office, *see* Def.'s Mem., Law Decl. ¶¶ 25-29, and located 3, 363 pages of records, *id.*, Law Decl. ¶ 32. Of these records, the ICE released 842 pages in their entirety and withheld portions of 2,521 pages under Exemptions 5, 6, 7(C), and 7(E). *Id.*, Law Decl. ¶ 32.

## II. DISCUSSION

Defendants argue that summary judgment is warranted because plaintiff failed to exhaust his administrative remedies with respect to his FOIA requests to the EOUSA and the SSA, either by clarifying his requests or by submitting an administrative appeal.[1] *See generally* Defs.' Mem. at 4-8. ICE argues that it, too, is entitled to summary judgment because it conducted an adequate search for records responsive to plaintiff's FOIA request and properly withheld certain information under Exemptions 5, 6, 7(C), and 7(E). *See generally* ICE's Mem. at 4-11.

### A. *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection

---

[1] Defendants move to dismiss or, alternatively, for summary judgment. Where, as here, the Court considers matters outside the pleadings, the Court treats defendants' motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d), 56.

requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 182 (D.D.C. 2011).

### B. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA. *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion allows "the agency [] an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). It is not a jurisdictional requirement, *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur*, 355 F.3d at 677. If a requester has not exhausted his administrative remedies prior to the filing of a civil action, his claim is subject to dismissal. *See Hidalgo*, 344 F.3d at 1258. A requester's "failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust" administrative remedies. *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006) (citations omitted).

"[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). A FOIA request must comply with agency regulations. *See Church of Scientology v. Internal Revenue Serv.*, 792 F.2d 146, 150 (D.C. Cir. 1986). For example, regulations require that a FOIA request to the EOUSA "describe the records that [are sought]" in enough detail to enable Department personnel to locate them with a reasonable amount of effort." 28 C.F.R. § 16.3(b). If the EOUSA "determines that [a] request does not reasonably describe records, it shall tell [the requester] either what additional information is needed or why [the] request is otherwise insufficient." *Id.* In addition, the agency shall provide the requester "an opportunity to discuss [the] request so that [the requester] may modify it." *Id.*

Plaintiff's purported FOIA request to the EOUSA did not seek any particular information. Rather, plaintiff submitted a Certificate of Identity, and left the EOUSA staff to divine his intentions. There are more than 100 United States Attorney's Offices throughout the United States, *see* Luczynski Decl., Ex. D at 1, and plaintiff's supposed clarification that his request was a "general request" did not indicate the offices most likely to maintain responsive records. It would have been unreasonable to expect EOUSA staff to guess which offices to search, and it would have been unduly burdensome for EOUSA staff to search more than 100 offices for responsive records. Similarly, plaintiff's purported FOIA request to the SSA included copies of information about plaintiff previously released to him. Under these circumstances, it was reasonable for SSA staff to seek clarification of the request. In neither case did plaintiff respond with a meaningful clarification of his request. Nor did plaintiff seek an administrative appeal of the initial determination. It was not enough that plaintiff identify himself; it was his

obligation to identify the records he sought. *See Brown v. Fed. Bureau of Investigation*, 678 F. Supp. 2d 122, 127 (D.D.C. 2009) (dismissing a FOIA claim against the FBI because plaintiff failed to mail his request directly to the appropriate field office as is required under agency regulations); *Thomas v. Fed. Comm'cns Comm'n*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008) (granting summary judgment in the agency's favor "[i]n the absence of any evidence that plaintiff submitted a proper FOIA request to which defendant would have been obligated to respond").

Plaintiff responds by pointing to the EOUSA's and the SSA's failure to respond to his FOIA requests within the requisite 20-day response period. *See* Opp'n to Def.'s Mot. to Dismiss Along With Its Request for Summ. J. ("Pl.'s Opp'n") at 4; *see also* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agency to "determine within 20 days . . . after the receipt of [a] request whether to comply with such request"). For this reason, he treated each lack of a timely response as the denial of his request. *See* Compl. at 1, 3. If the agency does not meet its deadline, "the requester can immediately sue to obtain the requested records and he 'shall be deemed to have exhausted his administrative remedies' because of the agency's tardiness." *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (quoting 5 U.S.C. § 552(a)(6)(C)); *see Oglesby*, 920 F.2d at 62 ("If the agency has not responded within the statutory time limits, then, under 5 U.S.C. § 552(a)(6)(C), the requester may bring suit."). The EOUSA responded within the 20-working day period, however. Even if its response were untimely, "this so-called constructive exhaustion ceases to offer a basis for judicial action once an agency actually responds." *Smith v. Fed. Bureau of Investigation*, 448 F. Supp. 2d 216, 220 (D.D.C. 2006) (citing *Oglesby*, 920 F.2d at 61, 63-64). Where, as here, "a requester actually receives an agency's untimely response before filing suit under § 552(a)(6)(A)(i), he must utilize the administrative appeals process –

which includes, as a final step, the right to sue in federal court – to resolve any FOIA disputes." *Judicial Watch*, 285 F. Supp. 2d at 26. Plaintiff did not pursue an administrative appeal of the EOUSA's initial determination and, therefore, he did not exhaust his administrative remedies prior to filing this lawsuit.

The SSA acknowledged receipt of plaintiff's November 18, 2010 request on March 30, 2011, followed by a request for clarification on April 1, 2011 – far beyond the 20-day period for an agency's response to a FOIA request. The flaw in plaintiff's argument is that the 20-day clock does not begin to run "until [the agency] has received a proper FOIA request in compliance with its published regulations." *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C. 2008) (citing 5 U.S.C. § 552(a)(3) and 552(a)(6)(A)(i)); *see Carbe v. Bureau of Alcohol, Tobacco and Firearms*, No.03-1658, 2004 WL 2051359, at *8 (D.D.C. Aug. 12, 2004) ("A proper FOIA request, once received, requires the government to search for responsive records and to release all that are not otherwise exempt."). Here, the SSA requested clarification of the nature and purpose of plaintiff's FOIA request, and plaintiff declined to provide one. Hence, plaintiff failed to exhaust his administrative remedies on his SSA request.

### C. ICE Has Not Shown that its Searches for Responsive Records Were Adequate

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). The agency may

submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). An agency's search must be reasonable. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 705 F.2d at 1351 (citing *Perry*, 684 F.2d at 128).

ICE's declarant explains that two offices, the Office of Homeland Security Investigations ("ICE HSI") and the Office of Enforcement and Removal Operations ("ICE ERO"), were the "program offices . . . most likely to have records responsive to the [p]laintiff's request." ICE's Mem., Law Decl. ¶ 26. ICE HSI is charged with investigating, deterring, and interdicting "threats arising from the movement of people and goods into and out of the United States, including investigations related to national security, financial crimes, money laundering, commercial fraud, smuggling, immigration fraud, transnational gangs, child exploitation and pornography." *Id.*, Law Decl. ¶ 8. Its headquarters office is in Washington, D.C.; there are 26 Field Offices in the United States, and international offices around the world. *Id.*, Law Decl. ¶ 8. ICE ERO "is responsible for enforcement of immigration laws," and to this end it "identifies and apprehends removable aliens, detains these individuals when necessary, and removes illegal aliens from the United States." *Id.*, Law Decl. ¶ 9.

Within ICE HSI, the declarant explains that "a search of the TECS database was conducted using search terms that included the name and alien number of the [p]laintiff," and that potentially responsive records were located and "forwarded to the ICE FOIA Office for review and processing." *Id.*, Law Decl. ¶ 28. Database searches within ICE ERO, the declarant states, neither located nor identified any responsive records. *Id.*, Law Decl. ¶ 29. Lastly, the declarant states that, because the Chicago Field Office "was involved in the investigation of the

[p]laintiff for fraud and related activity in connection with identity documents," a search of this office occurred, and that potentially responsive records were located and forwarded to the ICE FOIA Office for review and processing. *Id.*, Law Decl. ¶ 29.

Plaintiff explains that "he was charged with a Criminal Case which consisted on alien documents obtained unlawfully." Pl.'s Mem. in Supp. of his Objection for Summ. J. at 3 (page numbers designated by the Court). Because he "was prosecuted for his legally obtained identity and [it] was found that there was another individual with this same identity, [p]laintiff requires for everything may exist in his file with his or under his adopted Social Security Number." *Id.* ICE "did not produce a factual identity that could relate the presumed victim which claimed has been impersonated," and for this reason, plaintiff claims that ICE has failed to disclose "what could be exculpatory evidence favorable to [him]," that is, information about "the presumed victim" whose Social Security number he adopted. *Id.*

Plaintiff is "currently serving a 57-months [sic] of imprisonment for possession of illegal documents and identity theft." *Id.* Arthur Louis Guajardo apparently is the victim of plaintiff's crimes.[2] The Court understands plaintiff's challenge to ICE's searches as asserting that he has

---

[2]   "Arthur Guajardo, an Indiana resident, discovered in 2004 that another man was using his identity." *United States v. Perez-Rodriguez*, 358 Fed. App'x 700, 702 (7th Cir. 2009). Plaintiff apparently was that man:

> When he entered the United States unlawfully . . . , Mexican citizen Rafael Perez–Rodriguez bought a Social Security number and other personal identifiers stolen from Arthur Guajardo, whose name the defendant has used ever since. Federal authorities finally caught up with him in 2008 and charged him with wire fraud, 18 U.S.C § 1343; use of a passport obtained with a falsified application, *id.* § 1542; aggravated identity theft, *id.* § 1028A(a)(1); and fraudulent possession of five or more identification documents, *id.* § 1028(a)(3). A jury found the defendant guilty on all counts, and the district court sentenced him to a total of 57 months' imprisonment.

requested information about himself – both as Rafael Perez Rodriguez and as Arthur Louis Guajardo. Following this reasoning, ICE's apparent failure to search for and disclose information about Arthur Louis Guajardo renders the searches inadequate. Plaintiff demands "everything [that] may exist in his file or under his adopted Social Security Number." *Id.*

ICE's supporting declaration explains that plaintiff's name and alien number were used as search terms, *see* ICE's Mem., Law Decl. ¶¶ 27-28, and suggests that other terms were used as well, *see id.*, Law Decl. ¶ 28. The declarant neither specifies whether another name was used as a search term nor identifies the additional search terms used. The Certificate of Identity that accompanied plaintiff's FOIA request provides two names, and information about plaintiff conceivably might be located under either name. Under these circumstances, a search for records pertaining to "Rafael Perez Rodriguez" alone is not reasonable.[3]

ICE's declaration is deficient in another respect. "[A] search of the SAC Chicago was conducted," ICE's Mem., Law Decl. ¶ 29, yet the declaration does not describe the types of records maintained at the Chicago Field Office, the records actually searched, and the records identified as potentially responsive to plaintiff's FOIA request.[4]

---

*Id.* at 702; *see Perez-Rodriguez v. United States*, No. 10-CV-7039, 2011 WL 3165200, at *1 (N.D. Ill. July 27, 2011) ("Petitioner Rafael Perez–Rodriguez, a citizen of Mexico, began using the identity of victim Arthur Louis Guajardo, a United States citizen, in 1990.").

[3]     Plaintiff also supplied a Social Security Number and date of birth, both of which have been redacted pursuant to Local Civil Rule 5.4(f). *See* ICE's Mem., Law Decl., Ex. E (Certificate of Identity). It is unclear whether plaintiff has used more than one Social Security Number or date of birth.

[4]     The Court also notes that ICE's supporting declaration and *Vaughn* Index offer only a vague and conclusory justification for withholding information under Exemption 7(E). ICE withholds, for example, "transaction numbers, ROI numbers [and] case numbers" from emails, ICE's Mem., Law Decl., *Vaughn* Index (Page Nos. 000001-00854), "encounter identification numbers, TECS Records identification numbers, program codes . . . , TECS access codes, FBI numbers, case numbers, and miscellaneous DOJ case numbers" from TECS records, *id.* (Page

III.  CONCLUSION

Defendants demonstrate that plaintiff failed to exhaust his administrative remedies with respect to the FOIA requests submitted to the EOUSA and the SSA prior to filing this lawsuit, and the motion for summary judgment [Dkt. #20] on those grounds will be granted.  However, because ICE has not demonstrated that its searches for responsive records were reasonable under the circumstances, its motion for partial summary judgment [Dkt. #26] will be denied without prejudice.  An Order accompanies this Memorandum Opinion.


DATE:  August 31, 2012                                            /s/
                                                                                JOHN D. BATES
                                                                                United States District Judge

---

Nos. 000855-001040), and "TECS navigation codes, TECS terminal codes, terminal identification numbers, ICE Operation plan numbers, and secured URL numbers" from HSI Evidence Files, *id.* (Page Nos. 0001138-003363).  Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  None of the information described in the *Vaughn* Index is itself a law enforcement technique or procedure or a guideline for law enforcement investigations.  It is unclear, then, whether and how such information falls within the scope of Exemption 7(E).